IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 18, 2012

## STATE OF TENNESSEE v. AMANDA KAY PROFITT

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S59686    R. Jerry Beck, Judge**

**No. E2012-00373-CCA-R3-CD - Filed December 4, 2012**

The Defendant, Amanda Kay Profitt, pled guilty to four counts of obtaining a controlled substance by fraud and to one count of willful abuse, neglect, or exploitation of an adult. The trial court sentenced the Defendant to three years incarceration as a Range I, standard offender, at thirty percent, for the controlled substance offenses and to two years incarceration as a Range I, standard offender, at thirty percent, for the willful abuse of an adult offense. The sentences were ordered to run concurrently, for an effective sentence of three years at thirty percent. On appeal, the Defendant contends that the trial court erred when it ordered the Defendant to serve her sentence in confinement, specifically when it: (1) denied judicial diversion; and (2) denied alternative sentencing or probation. After a thorough review of the record and relevant authorities, we conclude that the trial court properly sentenced the Defendant. Accordingly, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Terry L. Jordan, Blountville, Tennessee, for the appellant, Amanda Kay Profitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Barry Staubus, District Attorney General, and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

The Sullivan County Grand Jury issued a presentment charging the Defendant with four counts of obtaining a controlled substance by fraud, Class D felonies, and one count of willful abuse, neglect, or exploitation of an adult, a Class E felony. The Defendant pled guilty to the charged offenses and agreed to allow the trial court to determine the manner and length of her sentence. During the guilty plea submission hearing, the State recited the following stipulated facts:

> The Defendant was an employee at the Holston Manor Nursing Home, a[n] . . . extended medical care facility located in Kingsport, Sullivan County, Tennessee. She worked in a capacity as a nurse administering medication to patients who were housed or hospitalized there at the Manor.
>
> This investigation, which was conducted by the Tennessee Bureau of Investigation, began when a nurse was alerted by a resident, Randall Fogleman, who, while being mentally alert and oriented, [wa]s a partial quadriplegic who [wa]s hospitalized there, stated that the morphine that he was given did not taste properly or did not taste right, and some question was as to what actually he had been given.
>
> The nursing home set aside the remaining bottle that was signed out for this patient. And ultimately it would be sent to the TBI lab . . . for analysis as part of this investigation.
>
> The administrators there at the nursing home, along with the director of nursing, began to look into the records of the patients that the Defendant had under her care, and found that there was a trend in which when she was on duty, that there was a substantial number of medication allegedly prescribed or administered to patients who had been authorized to have this - these controlled substances as needed.
>
> As they continued to look into it and developed a reason to believe that the Defendant, instead of administering this medication, was diverting it to her own use; and so, through the power of attorney for the patients of the nursing home, the administration, along with the TBI, allowed the Defendant, one night on shift, to go through the course of the shift; to allegedly administer medication; and then immediately after the Defendant left that night, they pulled the records that would involve her documentation of medication allegedly administered.
>
> And then, identifying four different patients, went and had their urine

2

drawn through the power of attorney. And from these patients, sent the urine to have it tested in a laboratory to determine if the Defendant had, in fact, administered the drugs as she had written in her documentation.

It was found, as to all four of the residents, that despite the Defendant's documentation that she had administered drugs, these drugs were not present in their urine. And it was also found, by sending the bottles of morphine sulfate that the Defendant had allegedly set aside for the administering of this pain medication to Randall Fogleman, that . . . when it was sent to the lab there was no presence of . . . this sulfate . . . in the bottle. Leading the investigators to believe that the Defendant had exchanged water for the morphine sulfate and was administering water to this patient.

As they continued to look into this and gather everything, the Defendant was brought in first by the administrative staff at the nursing home, and then later was interviewed by TBI Agent Stanley Hodges.

Agent Hodges first advised in writing and secured a written waiver of the *Miranda* rights of the Defendant. And then, after securing this interview, the Defendant, who initially denied diverting drugs, but ultimately indicated and gave a written statement that she was in fact diverting drugs for her own personal use, as well as admitting to . . . adulterating the prescribed liquid morphine for two residents of the facility; and instead, filling the bottles with water and taking the liquid controlled substance to her home, where she was intravenously administering or using drugs.

While interviewing the Defendant, . . . Agent Hodges was able to see track marks on her arms that were consistent with her admissions that she was using these drugs intravenously.

The four residents that were victims as far as the diversion of drugs, those victims are the victims in Counts 1 through 4.

Mr. Fogleman, who is the victim in Count 5, [wa]s in fact the adult as defined by TCA statute 71-6-102, who [wa]s incapacitated. And as a result of his incapacitation, the Defendant's not administering the drug medication or pain medication as needed, resulted in abuse, neglect, or exploitation of Mr. Fogleman.

Thereafter, the trial court accepted the Defendant's guilty plea as knowing and

3

voluntary, and the Defendant requested a judicial diversion hearing.

At the judicial diversion hearing, the Defendant testified that she was thirty-five years old and lived in Kingsport with her fiancé and her two daughters. She stated that she was unemployed but had looked for work at Food City, Pet Smart, Dick's Sporting Goods, and Walmart. She testified that she was a licensed practical nurse but had not been practicing. She stated that the state board did not revoke her license, but she allowed it to expire. She testified that, because she was "a drug addict," she had no intention to return to the medical field and would not renew her license. She stated that, despite attending drug addiction counseling programs, she cannot "even go to a hospital to visit" due to the temptation to access drugs.

The Defendant testified that she completed fifty-nine and one half counseling sessions, each being three hours in duration, with Holston Counseling Services. She also stated that she attended hour-long Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings three times a week. The Defendant was scheduled to graduate from the programs at Holston Counseling Services a few days after the judicial diversion hearing. Additionally, the Defendant saw a therapist, Alisha Williams, who recommended that she continue treatment. The Defendant testified that she planned to follow her therapist's recommendation and attend an "aftercare" program called "Women's Recovery Intensive Outpatient." The Defendant stated that, throughout her time in rehabilitation, she never failed the weekly drug tests. She testified that the rehabilitation had "helped" her "know [she did not] need it" and "helped [her] with some anger management." She stated that she did not have additional charges pending against her.

Further, the Defendant noted that, in her statement to Agent Hodges, she admitted her actions and took responsibility for them. She testified that she was remorseful and "wished [she had] never done it." She admitted that she thought "daily" about the patients she hurt. In asking the trial court for judicial diversion or probation, she said she planned to remain in her rehabilitation programs. She stated that she "fe[lt] like . . . a different person" and that she never "want[ed] to ever use drugs again." She said that her motto was "[d]o something different to stay away [from drugs]."

On cross-examination, the Defendant admitted that Randall Fogleman, a quadriplegic confined to a hospital bed, relied on her and other nursing staff to tend to his medical needs, which included the administration of morphine to control his physical pain. The Defendant admitted that, at least one of the bottles of morphine that she administered to Fogleman, contained no morphine and "was complete water." The Defendant agreed that the other patients affected by her actions were also "basically incompetent" and could not communicate their pain to the Defendant. The Defendant further admitted that, before she

4

worked at the nursing home, she was fired from her nursing position at a hospital for "doing the same thing," diverting drugs from patients for her own use. The Defendant agreed that she did not report her actions to the state licensing board, and she did not report her actions to the nursing home prior to accepting a position at the facility. The Defendant agreed that she denied her actions when Agent Hodges initially confronted her with the accusations, but, after he showed her the evidence against her, the Defendant admitted her actions. Finally, the Defendant stated that she "didn't realize" that her nursing license had expired on November 30, 2010, and continued working at the nursing home until she was fired in January 2011.

Stanley Hodges, an agent with the Tennessee Bureau of Investigation ("TBI"), testified that he conducted the investigation of the Defendant. He stated that, during his investigation, he discovered that a bottle of morphine designated to be administered to Fogleman was "diluted to the point to where they could not determine what the substance was." Agent Hodges agreed that he interviewed Fogleman and determined that Fogleman "was exhibiting the classic signs of withdrawal" from morphine sulfate. He stated that Fogleman's "medications [were] scheduled, which means they [were] not '*as needed*.' The medications he receive[d] by mouth, the morphine sulfate, [was] scheduled for pain." (emphasis in original). The agent further testified that three patients, other than Fogleman, affected by the Defendant's actions were of such "advanced age and mental degradation" that he was unable to interview them.

After considering the evidence, the trial court denied judicial diversion and denied probation. The trial court sentenced the Defendant to three years, as a Range I, standard offender, at thirty percent for each of the four counts of obtaining a controlled substance by fraud, to be served concurrently. For the willful abuse, neglect, or exploitation of an adult offense, the trial court sentenced the Defendant to two years, as a Range I, standard offender, at thirty percent, to be served concurrently with the controlled substance offenses. Therefore, the Defendant received an effective sentence of three years of incarceration at thirty percent. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it: (1) denied judicial diversion because it did not consider "the relevant factors for the decision;" and (2) denied alternative sentencing or probation because the Defendant's "drug rehabilitation efforts, her remorse, and her lack of further criminal activity" demonstrated that "a probationary sentence [was] appropriate." The State responds that the record supported the trial court's denial of judicial diversion, its denial of probation, and its decision to order total confinement. We agree with the State.

5

## 1. Judicial Diversion

The Defendant argues that the trial court erred when it denied judicial diversion "by not considering the relevant factors for the decision."  The State responds that the record supports the trial court's denial of judicial diversion to the Defendant.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty.  T.C.A. § 40-35-313(a)(1)(A) (2010). The statute states that a trial court may grant judicial diversion in appropriate cases.  *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon.  *Id.*  To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i) (2010).  Eligibility does not automatically entitle the Defendant to judicial diversion.  *State v. Bonestal*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion.  Due to the similarities between pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and

6

the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Additionally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Id*. (citing *Bonestal*, 871 S.W.2d at 168). When a defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *Cutshaw*, 967 S.W.2d at 344. We must conclude that "no substantial evidence exists to support the ruling of the trial court" in order to grant the Defendant relief. *Id*. Lastly, it is well settled that "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases[,] but they are more stringently applied to diversion applicants." *State v. Holland*, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983).

In the present case, the trial court considered the presentence report and the evidence presented at the judicial diversion hearing. Although the Defendant argues that the trial court did not properly consider the relevant factors, including amenability to correction, social history of the Defendant, the Defendant's mental and physical health, and the deterrent effect upon the Defendant and the community, the record proves that the trial court considered and weighed the required factors in its decision. In doing so, the trial court weighed the positive factors, "such as no record, attempt to work, furthering her education," finding that "[s]o much of that is good, and I would state on the record I find that much of that is good." The trial court then considered the factors that negatively impacted the Defendant:

> But in weighing the good factors against the bad factors in this case, the Defendant basically, to support her drug addiction, which she freely admits, . . . her victims were either elderly patients who could not control their environments; and in one case a quadriplegic man . . . who described in his victim impact statement that . . . he couldn't live a normal life, even as a paraplegic, for a period of eight months.

The trial court also noted the Defendant's "minor prior record" and considered it "in the mix as part of [its] finding." The trial court placed specific emphasis on "the nature of the crime," considering the Defendant's actions as "egregious" and "intolerable." The trial court specifically mentioned that this case differed from "a situation where a person was addicted and buying from a . . . drug dealer" because, "by her action, [the Defendant] has actually harmed other people involved with her crimes." Further, the trial court considered the Defendant's role as a nurse, noting that she harmed people entrusted to her care and never reported her actions to the nursing board. As a result, weighing the "nature of the crime, the serious[ness] of the crime, [and] the nature and result of the crime," the trial court found that it "should do nothing else . . . but deny [] diversion."

7

Based upon its consideration of the circumstances of the crime, the nature of the Defendant's actions, and the effects of the Defendant's actions, we conclude that the trial court properly denied judicial diversion. Although succinct, the trial court explained the reasons the negative factors outweighed the positive factors in its decision to deny judicial diversion to the Defendant. *See Cutshaw*, 967 S.W.2d at 344. Further, substantial evidence in the record supports the trial court's finding, demonstrating that the Defendant's actions affected the health and well-being of "elderly patients who could not control their environment." Considering the circumstances of the offense, the Defendant's amenability to correction, the deterrent value of the punishment to the Defendant and others, and the interests of the public, we conclude that the trial court did not abuse its discretion when it denied the Defendant judicial diversion. The Defendant, therefore, is not entitled to relief on this issue.

## 2. Denial of Alternative Sentencing or Probation

The Defendant contends that the trial court erred by denying her an alternative sentence or probation because the Defendant's "drug rehabilitation efforts, her remorse, and her lack of further criminal activity" demonstrated that "a probationary sentence [was] appropriate." The State responds that the record supports the trial court's denial of probation.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2010); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). In 2005, the Tennessee General Assembly amended the sentencing law in order to bring Tennessee's sentencing scheme into compliance with United States Supreme Court rulings on the subject. *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004).

Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors applied to the defendant's sentence. T.C.A. § 40-35-401(b)(2) (2004). The 2005 amendments, however, deleted, as grounds for appeal, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. As a result, the appellate courts were "left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." *Carter*, 254 S.W.3d at 345-46.

Appellate review of sentences has been *de novo* with a presumption of correctness.

In a recent decision, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Susan Renee Bise*, - - - S.W.3d - - -, - - -, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *19 (Tenn. Sept. 29, 2012).

A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The "presumption of reasonableness" applied to sentences imposed by trial courts "'reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case .'" *Susan Renee Bise*, 2012 WL 4380564, *15 (quoting *Rita v. United States*, 551 U.S. 338, 341 (2007)). A presumption of reasonableness "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of [sentencing purposes] in the mine run of cases, it is probable that the sentence is reasonable." *Rita*, 551 U.S. at 350-51.

Regarding alternative sentencing, the Tennessee Supreme Court noted that, due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347, (Tenn. 2008) (citing T.C.A.§ 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6) (2010). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (2010) (emphasis added).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2010). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible

9

defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2010), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2010).

In the present case, the Defendant pled guilty to four counts of obtaining a controlled substance by fraud, Class D felonies, and one count of willful abuse, neglect, or exploitation of an adult, a Class E felony. The trial court sentenced the Defendant to less than ten years as a Range I, standard offender. Therefore, the Defendant was eligible for alternative sentencing, including probation . *See* T.C.A. §§ 40-35-102(6), -303(a) (2010).

After reviewing the record, we conclude that the trial court properly denied alternative sentencing or probation to the Defendant. As in its consideration of the judicial diversion issue, the trial court considered the presentence report and the evidence presented by both parties. The trial court found that, because "the seriousness and egregious nature of the offense" outweighed the other factors, including the Defendant's rehabilitation efforts and her remorse, the trial court "should do nothing else but deny . . . probation or any other form

of alternative sentencing." The trial court further noted that the Defendant had a "minor prior record," she "harmed other people," and "has not reported [her actions] to the nursing board."

Although the Defendant took measures to address her drug addiction by attending drug rehabilitation programs and following treatment recommendations from a therapist, her actions negatively affected elderly and incapacitated patients who relied upon the proper administration of medication to sustain their health and well-being. The Defendant's behavior demonstrated her disrespect for the people entrusted to her care and to individuals in the community. Further, before she worked at the nursing home, the Defendant was fired from her nursing position at a hospital for diverting drugs from patients for her own use. The Defendant did not report her actions to the state licencing board, and she did not report her actions to the nursing home prior to accepting a position at that facility. Based upon the seriousness of the offense and to avoid depreciating the egregious nature of the crime, we agree with the trial court's decision to require the Defendant to serve her sentence in incarceration. Therefore, we conclude that the trial court's denial of alternative sentencing or probation is properly supported by the record. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

11